**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| Merit Medical Systems, Inc., | |
| Plaintiff, | Civil Action No. _____ |
| v. | |
| Vascular Access Direct, LLC, | |
| Defendant. | **JURY TRIAL DEMANDED** |

<u>**COMPLAINT**</u>

Plaintiff Merit Medical Systems, Inc. ("Plaintiff" or "Merit"), by and through its attorneys, for its complaint against Defendant Vascular Access Direct, LLC ("Defendant" or "Vascular Access"), alleges the following:

<u>**NATURE OF THE ACTION AND SUMMARY OF RELIEF SOUGHT**</u>

This is a patent infringement action through which Merit seeks to immediately and permanently enjoin Vascular Access' blatant and willful infringement of Merit's patent rights relating to its vascular inflation device inventions and to recover all monetary damages caused thereby. Specifically, pursuant to the Patent Act, 35 U.S.C. §§ 271, 283-285, Merit seeks to immediately and permanently enjoin Vascular Access from making, using, selling, offering to sell and importing its infringing digital inflation devices, including those sold under the INT® Force Digital Inflation Device brand (the "Infringing Inflation Devices"), to recover all damages caused by Vascular Access's infringing actions, and to recover trebled damages and Merit's attorneys' fees in view of Vascular Access's willful patent infringement.

## PARTIES

1.      Plaintiff Merit Medical Systems, Inc. is a Utah corporation with its principal place of business at 1600 West Merit Parkway, South Jordan, Utah 84095.

2.      Defendant Vascular Access Direct LLC is a Delaware limited liability company with a principal place of business at 83 Wooster Heights Rd., Suite 125, Danbury, CT 06810.

3.      On information and belief, Vascular Access has sold and/or offered to sell the Infringing Inflation Devices from its Connecticut offices to hospitals across the United States. Upon information and belief, Vascular Access imports, sells, offers to sell, and/or uses the Infringing Inflation Devices throughout the United States, including in this District, which actions infringe Merit's patent rights.

## JURISDICTION AND VENUE

4.      This is an action for patent infringement under the United States Patent Act, specifically 35 U.S.C. § 271. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Vascular Access because it is a Delaware limited liability company.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400 because Vascular Access Vascular Access is incorporated in Delaware and, on information and belief, it has committed acts of infringement in this district.

## FACTUAL BACKGROUND

7.      Inflation devices are medical tools used to inflate balloons during interventional medical procedures like angioplasty, urological procedures, and balloon dilation. The devices help control the inflation process, monitor pressure, and ensure precise inflation. There are various types of inflation devices, including manual, digital, and automated models, designed for specific

procedures and pressure requirements. The overall inflation device market was valued at US $577 million in 2023 and is projected to reach US $937 million by 2032.[1] The bulk of inflation device sales occur in North America.

<u>**MERIT'S PATENTED INVENTION**</u>

8.     Merit has been a market leader in vascular medical device technology, including inflation device technology, for over 30 years.

9.     Merit designs, develops, manufactures, and sells inflation devices with digital displays to clinics and hospitals globally, including throughout the United States.

10.     About 15 years ago in 2010, Merit launched an improved inflation device called the Blue Diamond® Digital Inflation Device, pictured below. The Blue Diamond® device offers an integrated digital gauge and timer with the ability to record and recall prior inflation information, ensuring not only precise inflation pressure, but also the ability to track procedure data.



---

[1] "Inflation Devices Market Size, Share & Segmentation by Display Type, by Application, by End User, and Global Forecast 2024-2032" , dated December 2024, Report Code: SNS/HC/4907, https://www.snsinsider.com/reports/inflation-devices-market-4907, retrieved April 24, 2025.

11.    In or around 2018, Merit launched the DiamondTOUCH™ Digital Inflation Device, pictured below.  The DiamondTOUCH™ device operates in the same manner and provides the same benefits as the Blue Diamond® device, with the exception of the DiamondTOUCH™ device having a different handle that allows for one-handed operation.



12.    Given the innovative nature of Merit's inflation device technology, including the Blue Diamond® and DiamondTOUCH™ devices (hereafter the "Patented Diamond Devices"), Merit applied for patents to protect Merit's exclusive rights in its inflation device inventions, including Merit's right to maintain exclusivity in the market for innovations found in the Patented Diamond Devices.

13.    Recognizing the novelty and utility of Merit's inflation device inventions, the United States Patent and Trademark Office ("USPTO") granted Merit several patents to protect its proprietary innovations, including those embodied in the Patented Diamond Devices.

14.    Among Merit's inflation device patents is United States Patent No. 7,892,202 (the "'202 patent"), titled "System and Method for Inflation Syringe with Improved Display." A copy

of the '202 patent is attached as Exhibit A. The USPTO issued the '202 patent on February 22, 2011.

15.    The '202 patent is valid and enforceable, and is assigned to Merit.

16.    Each of the Patented Diamond Devices practices one or more claims of the '202 patent.

17.    The USPTO also granted Merit United States Patent No. 8,118,776 (the "'776 patent"), titled "System and Method for Inflation Syringe with Improved Display and Modularized Component Assembly." A copy of the '776 patent is attached as Exhibit B. The USPTO issued the '776 patent on February 21, 2012.

18.    The '776 patent is valid and enforceable, and is assigned to Merit.

19.    Each of the Patented Diamond Devices practices one or more claims of the '776 patent.

20.    The USPTO also granted Merit United States Patent No. 8,398,588 (the "'588 patent"), titled "System and Method for Inflation Syringe with Improved Display and Modularized Component Assembly." A copy of the '588 patent is attached as Exhibit C. The USPTO issued the '588 patent on March 19, 2013.

21.    The '588 patent is valid and enforceable, and is assigned to Merit.

22.    Each of the Patented Diamond Devices practices one or more claims of the '588 patent.

23.    The '202 patent, '776 patent, and '588 patent (collectively, the "Asserted Patents") claim novel and non-obvious methods and apparatuses for providing both numeric and non-numeric indications of an inflation pressurization associated with an inflation syringe, which was a significant improvement over prior art devices, including Merit's own prior art devices.

24.     Merit has marked and continues to mark its Patented Diamond Devices with the Asserted Patent numbers. *See* https://www.merit.com/about/patents/.

25.     Since their launch, the Patented Diamond Devices have garnered significant praise from customers and have generated millions of dollars in annual revenues.

26.     Today, Merit sells the Patented Diamond Devices to more than 700 hospitals across the country.

## VASCULAR ACCESS'S INFRINGEMENT

27.     For 15 years, Merit enjoyed the exclusive rights to its inflation device technology and inventions under the Asserted Patents, and competitors largely respected those rights and competed using their own designs and technology.

28.     Merit's exclusive rights under the Asserted Patents will remain in force for approximately another four years, during which time Merit has expected to continue to have exclusivity to its technology and sufficient time to prepare for the competitive landscape to change when its patent rights expire via developing new designs for the future or otherwise.

29.     In May 2025, however, Merit's employees discovered that Vascular Access, rather than waiting for Merit's valid patent rights to expire, jumped the gun and began offering a new Force digital inflation devices (the Infringing Inflation Devices). An exemplary picture of an Infringing Inflation Device is below.

4937-8554-1189\2



30.    Vascular Access's Infringing Inflation Devices are a blatant copy of Merit's patented inventions embodied in its Patented Diamond Devices and designed to capitalize on the success of Merit's products. Indeed, Vascular Access explicitly markets its products as designed to directly compete with Merit's patent-practicing Blue Diamond Products:[2]

---

[2] Image of https://vascularaccessdirect.b2bwave.com/products/list?category=159, captured May 16, 2025.



31.     On information and belief, Vascular Access has the Infringing Inflation Devices manufactured in China[3] at a significantly lower cost such that Vascular Access is severely undercutting Merit's price for the Patented Diamond Devices, thereby eroding Merit's ability to set and maintain prices for its patented innovations. *See* Exhibit D.



---

[3] *See* https://www.sh-intmedical.com/product/inflation-device

4937-8554-1189\2

32.     Vascular Access's blatant and willful infringement of Merit's Asserted Patents with a cheap knock-off device will result in significant price erosion, lost market share, impaired business relationships, and reputational harm if Vascular Access is allowed to continue offering and selling the Infringing Inflation Devices.  All these harms are and will be irreparable and cannot be remedied via monetary damages alone.

33.     Merit has acquired what it understands to be a representative example of the technology found in the Infringing Inflation Devices from what is believed to be the Chinese manufacturer of Vascular Access' Infringing Inflation Devices. For at least the reasons below, this unit demonstrates the infringement of the Infringing Inflation Devices.

34.     The Infringing Inflation Devices comprise an inflation syringe configured to allow a medical professional to selectively provide a desired amount of inflation pressurization during a medical procedure to inflate a medical instrument. The Infringing Inflation Devices include a barrel defining an inner lumen and configured to hold a desired inflation pressure and a plunger configured to be received within the inner lumen of the barrel to increase pressurization within the barrel.



4937-8554-1189\2

35.    The Infringing Inflation Devices have a pressure sensor, which is a sensor apparatus for sensing inflation pressurization within the barrel.



36.    The Infringing Inflation Devices have a display mounted to the exterior of the barrel and configured to link to the pressure sensor when the display is mounted to the barrel to display the inflation pressurization detected by the pressure sensor within the barrel.





37.     The Infringing Inflation Devices display includes a numeric indicator which provides a numeric indication of a current inflation pressurization within the barrel. As shown above, the display shows the inflation pressure of "2.6 atm/0.1MPa."

38.     The Infringing Inflation Devices' display also includes a plurality of discrete non-numeric indicia which are actuated to provide a non-numeric representation of the current inflation pressurization, as shown above.

39.     The non-numeric indicia on the display are actuated in a progressive manner such that non-numeric indicia representing values less than the current inflation pressurization value remain actuated as the pressurization increases and decreases, as shown in the figure above. The three non-numeric indicia representing values less than the current inflation pressurization value of 2.6 atm/0.1MPa remain actuated as the pressurization increased to 2.6 atm/0.1MPa.

40.     The non-numeric indicia simultaneously provide a non-numeric representation of a value that is different from the current inflation pressurization, as shown below.



Non-numeric indicia simultaneously providing a non-numeric representation of a different value (for example, the prior maximum pressurization) (not the current inflation pressurization)

Array of non-numeric indicia

41.    The non-numeric indicia on the display of the Infringing Inflation Devices provide a visual representation of the inflation pressurization along a range of possible inflation pressures, as shown by the range of 0 to 30 in the above figure.

42.    The plurality of non-numeric indicia on the display of the Infringing Inflation Devices are arranged in an array, as shown in the above figure.

43.    The array of non-numeric indicia on the display of the Infringing Inflation Devices includes a first indicium which corresponds with a first pressurization value and a second indicium that corresponds with a second pressurization value, as shown below.



Second indicium corresponding to second pressurization value (prior maximum pressurization) of 30 atm/0.1MPa

First indicium corresponding to first pressurization value of 2.6 atm/0.1MPa

4937-8554-1189\2

44.    The non-numeric indicia on the display of the Infringing Inflation Devices further provide non-numeric representation of a maximum pressurization within the barrel during the most recent inflation routine. For example, if a first inflation routine goes to 30 atm/0.1MPa, then back to 0, 30 atm/0.1MPa will remain as the high "tick" mark on the display. During a second pressurization that goes to 10 atm/0.1MPa, 30 atm/0.1MPa will remain displayed.

45.    The non-numeric indicia on the display of the Infringing Inflation Devices are arranged in a curvilinear configuration, as shown in the figure above (the corners are curved).

46.    The non-numeric indicia on the display of the Infringing Inflation Devices are arranged in a non-linear configuration, as shown in the figure above.

47.    The Infringing Inflation Devices necessarily include a display processor because it has a pressure sensor and a digital display that displays the pressurization information from the sensor.

 

48.    The Infringing Inflation Devices have a display module coupled to the display processor to display information contained in the signals from the sensor apparatus, wherein the display module comprises a numeric indicator which provides a numeric indication of a current inflation pressurization within the barrel.



Numeric indicator

49.    The Infringing Inflation Devices' display includes a plurality of non-numeric indicia which are actuated in a progressive manner, such that non-numeric indicia representing values less than the current inflation pressurization value remain actuated as the pressurization within the barrel increases and decreases, as shown below. The three non-numeric indicia representing values less than the current inflation pressurization value of 2.6 atm/0.1MPa remain actuated as the pressurization increased to 2.6 atm/0.1MPa.



Non-numeric indicia

Numeric indicator

50.     The Infringing Inflation Devices have a display housing comprising a base and a hood, wherein the base is configured to attach to the barrel and to receive the display processor and display module, and wherein the display hood is configured to couple to the display base and secure the display processor and display module within the display housing, as shown below.



51.     The Infringing Inflation Devices is assembled by obtaining an inflation syringe with a barrel, as described above.

52.     On information and belief, Vascular Access' manufacturer tests the integrity of the Infringing Inflation Devices during manufacture.

53.     The Infringing Inflation Devices is assembled by obtaining a processor adapted to process signals from a pressure sensor. The Infringing Inflation Devices must have a processor because it has a sensor and a digital display that displays pressurization information from the sensor.

4937-8554-1189\2



54.     On information and belief, Vascular Access' manufacturer tests the operation of the processor of the Infringing Inflation Devices during manufacture.

55.     The Infringing Inflation Devices are assembled by obtaining a display module adapted to display numeric and non-numeric information communicated in the signals received from the pressure sensing apparatus and processed by the processor, as described above.

56.     On information and belief, Vascular Access's manufacturer tests the operation of the display module of the Infringing Inflation Devices during manufacture.

57.     The Infringing Inflation Devices are assembled by securing a housing base to a mounting point on the barrel, as discussed above.

58.     The Infringing Inflation Devices are assembled by coupling the processor to the display module. The processor must be coupled to the display module because the display of the Infringing Inflation Devices displays information from the pressure sensor.

59.     On information and belief, Vascular Access' manufacturer tests the processor and the display module of the Infringing Inflation Devices when coupled together, as referenced above.

60.     The Infringing Inflation Devices are assembled by placing the processor and the display module in the housing base.

61.     In assembling the Infringing Inflation Devices, the processor is positioned to receive signals from the pressure sensor that detects pressurization within the barrel. The

processor must be operably coupled to the pressure sensor and the display for the display to display information from the pressure sensor.



62.    The Infringing Inflation Devices are assembled by coupling a housing hood to the housing base. The housing hood of the Infringing Inflation Devices is adapted to secure the processor and display module.



63.    On information and belief, Vascular Access and/or its manufacturer tests the operation of the fully assembled Infringing Inflation Devices as described above.

64.    Based on the foregoing facts, the Infringing Inflation Devices satisfy each limitation of at least claims 1, 2, 3, 4, 5, 6, and 8 of the '202 patent.

65.    Based on the foregoing facts, the Infringing Inflation Devices satisfy each limitation of at least claim 1 of the '776 patent.

66.    Based on the foregoing facts, the process for making the Infringing Inflation Devices satisfy each limitation of at least claim 1 of the '558 patent.

## FIRST CAUSE OF ACTION
## INFRINGEMENT OF THE '202 PATENT

67.    Merit hereby incorporates by reference all preceding paragraphs in support of the First Cause of Action by this reference.

68.    On information and belief, Vascular Access imports the Infringing Inflation Devices into the United States from China where they are manufactured. On information and belief, Vascular Access also offers for sale, sells, and uses the Infringing Inflation Devices in the United States.

69.    Because each Infringing Inflation Devices satisfy each limitation recited in at least claims 1, 2, 3, 4, 5, 6, and 8 of the '202 patent, Vascular Access's acts of making, using, offering to sell, selling, and/or importing the Infringing Inflation Devices in the United States constitute acts of direct infringement of the '202 patent under 35 U.S.C. § 271, including at least § 271(a).

70.    Given Vascular Access's actual and constructive notice of the '202 patent and Merit's allegations of infringement, Vascular Access's infringing activity has demonstrated and continues to demonstrate a deliberate and conscious decision to infringe the '202 patent, or at the

very least a reckless disregard of Merit's patent rights and therefore constitutes willful infringement.

71.     Vascular Access's continued infringing activity has caused and will continue to cause irreparable injury to Merit.

72.     Merit is entitled to a preliminary and permanent injunction under 35 U.S.C. § 283 prohibiting Vascular Access from further making, using, offering to sell, selling, and importing the Infringing Inflation Devices and any other infringing product in order to prevent further irreparable harm to Merit.

73.     Merit is entitled to recover all monetary damages caused by Vascular Access' infringing conduct under 35 U.S.C. § 284, including lost profits and/or reasonable royalties.

<u>**SECOND CAUSE OF ACTION**</u>
<u>**INFRINGEMENT OF THE '776 PATENT**</u>

74.     Merit hereby incorporates by reference all preceding paragraphs in support of the Second Cause of Action by this reference.

75.     On information and belief, Vascular Access imports the Infringing Inflation Devices into the United States from China where they are manufactured. On information and belief, Vascular Access also offers for sale, sells, and uses the Infringing Inflation Devices in the United States.

76.     Because the Infringing Inflation Devices satisfy each limitation recited in at least claim 1 of the '776 patent, Vascular Access's acts of making, using, offering to sell, selling, and/or importing the Infringing Inflation Devices in the United States constitute acts of direct infringement of the '776 patent under 35 U.S.C. § 271, including at least § 271(a).

77.     Given Vascular Access's actual and constructive notice of the '776 patent and Merit's allegations of infringement, Vascular Access's infringing activity has demonstrated and

continues to demonstrate a deliberate and conscious decision to infringe the '776 patent, or at the very least a reckless disregard of Merit's patent rights and therefore constitutes willful infringement.

78.     Vascular Access's continued infringing activity has caused and will continue to cause irreparable injury to Merit.

79.     Merit is entitled to a preliminary and permanent injunction under 35 U.S.C. § 283 prohibiting Vascular Access from further making, using, offering to sell, selling, and importing the Infringing Inflation Devices and any other infringing product in order to prevent further irreparable harm to Merit.

80.     Merit is entitled to recover all monetary damages caused by Vascular Access's infringing conduct under 35 U.S.C. § 284, including lost profits and/or reasonable royalties.

## THIRD CAUSE OF ACTION
## INFRINGEMENT OF THE '588 PATENT

81.     Merit hereby incorporates by reference all preceding paragraphs in support of the Third Cause of Action by this reference.

82.     On information and belief, Vascular Access imports the Infringing Inflation Devices into the United States from China where they are manufactured, and no manufacturing steps are performed stateside after importation. On information and belief, Vascular Access also offers for sale, sells, and uses the Infringing Inflation Devices in the United States.

83.     Because the method of assembling the Infringing Inflation Devices satisfy each and every limitation recited in at least claim 1 of the '588 patent, Vascular Access's acts of making, using, offering to sell, selling, and/or importing the Infringing Inflation Devices in the United States constitute acts of direct infringement of the '588 patent under 35 U.S.C. § 271, including at least § 271(g).

84.    Given Vascular Access's actual notice of the '588 patent and Merit's allegations of infringement, Vascular Access's infringing activity has demonstrated and continues to demonstrate a deliberate and conscious decision to infringe the '588 patent, or at the very least a reckless disregard of Merit's patent rights and therefore constitutes willful infringement.

85.    Vascular Access's continued infringing activity has caused and will continue to cause irreparable injury to Merit.

86.    Merit is entitled to a preliminary and permanent injunction under 35 U.S.C. § 283 prohibiting Vascular Access from further making, using, offering to sell, selling, and importing the Infringing Inflation Devices and any other infringing product in order to prevent further irreparable harm to Merit.

87.    Merit is entitled to recover all monetary damages caused by Vascular Access's infringing conduct under 35 U.S.C. § 284, including lost profits and/or reasonable royalties.

## **PRAYER FOR RELIEF**

WHEREFORE, Merit seeks relief as follows:

1.    That this Court enter judgment that Vascular Access has infringed the asserted claims of the Asserted Patents and that the asserted claims of the Asserted Patents are valid and enforceable;

2.    That this Court enter a preliminary and permanent injunction against Vascular Access prohibiting Vascular Access from any further infringement of the Asserted Patents through making, using, offering to sell, selling, or importing the Infringing Inflation Devices and any other product that infringes one or more claims of the Asserted Patents;

3.    That this Court award Merit all damages caused by Vascular Access's infringing actions, including lost profits and reasonable royalties;

4.      That this Court find this case exceptional and award Merit enhanced damages and all attorneys' fees and costs incurred by Merit in this action;

5.      For any further relief that this Court deems equitable and just.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Merit demands a jury trial on all issues so triable.

Dated: May 23, 2025

DORSEY & WHITNEY (DELAWARE) LLP

*/s/ Alessandra Glorioso*
Eric Lopez Schnabel (DE Bar No. 3672)
Alessandra Glorioso (DE Bar No. 5757)
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801
Telephone:  (302) 425-7171
Email:  schnabel.eric@dorsey.com
        glorioso.alessandra@dorsey.com


DORSEY & WHITNEY LLP
Mark A. Miller (PHV forthcoming)
Elliot J. Hales (PHV forthcoming)
111 S. Main St., Suite 2100
Salt Lake City, Utah 84111
Telephone: (801) 933-7360
Email: miller.mark@dorsey.com
Email: hales.elliot@dorsey.com

*Attorneys for Plaintiff Merit Systems, Inc.*

4937-8554-1189\2